IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| JOHN TRUSZ, | : | CIVIL ACTION |
|---|---|---|
| Plaintiff | : | |
| | : | |
| v. | : | NO. 13-2684 |
| | : | |
| EASTON AREA | : | |
| SCHOOL DISTRICT, | : | |
| Defendant | : | |

# MEMORANDUM

**STENGEL, J.**                                                                                   September 5, 2013

      Plaintiff John Trusz is suing the Easton Area School District pursuant to 42 U.S.C. § 1983, alleging that the termination of his employment from the District violated his procedural due process rights under the Fourteenth Amendment, and violated Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. The defendant filed a motion to dismiss pursuant to Rule 12(b)(6), to which the plaintiff responded.

      Initially, I note that in deciding a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint, and matters of public record. Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). A court may consider, however, an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on that document. Id. If a court considers matters outside the pleadings, our rules require that a motion to dismiss be converted to one for summary judgment.

See FED.R.CIV.P. 12(d).[1]  Although extraneous to the pleadings, however, some exhibits attached to a motion to dismiss may properly be considered under Rule 12(b)(6) without converting the motion into one for summary judgment because they are integral or explicitly relied upon in the complaint.  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).  The rationale for the conversion is to afford the plaintiff an opportunity to respond.  Pension Benefit Guar. Corp., 998 F.2d at 1196.  When a complaint relies on a document, the plaintiff obviously is on notice of the contents of the document, and the need for a chance to refute that evidence is greatly diminished.  Id. at 1196-1197.

     Here, it is not necessary to convert this motion to dismiss into one for summary judgment.  The amended complaint contains gaps in the information provided along with unclear assertions which render it difficult to discern.  The documents submitted by the defendant in its motion to dismiss are undisputedly authentic and provide a basis for the plaintiff's claims in the amended complaint.  For example, the defendant attached the sworn affidavit of John Castrovinci, its Director of Human Resources.  Attached to the affidavit were relevant portions of the Collective Bargaining Agreement between the defendant and Mr. Trusz's union, which explain when an employee would be subject to immediate discharge, and which outline the union's grievance procedures.  Also attached were various memos, including the memo to Mr. Trusz informing him of his suspension

---

[1] Rule 12(d) provides that "if, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."

with pay; the memo to Mr. Trusz memorializing the meeting held with him on December 6, 2011, after which his employment status was changed to suspended without pay; and the letter to Mr. Trusz scheduling a termination hearing, and notifying him that the District was recommending that he be terminated. The defendant also attached a transcript of Mr. Trusz's termination hearing held on August 20, 2012. Finally, the defendant attached the Adjudication of the Board of Directors of the District dated September 18, 2012, which contained findings of fact and the conclusion that Mr. Trusz had committed the offense of "improper conduct," and that his employment with the District was terminated effective immediately. These attachments are undisputedly authentic, provide a basis for the plaintiff's claims, and fill in the obvious gaps which were certainly inadvertently left open in the amended complaint. I also note that in his response to the motion to dismiss, Mr. Trusz did not object to any of this evidence being considered here. Accordingly, for the following reasons, I will grant the motion in its entirety.

## I. BACKGROUND[2]

Mr. Trusz began working for the District as a school bus driver on June 25, 1997. During his seventeen years with the District, he received satisfactory job performance reviews.

---

[2] The facts are gleaned from the complaint and the extrinsic documents upon which it is based. See GSC Partners, CDO Fund v. Washington, 368 F.3d 228, 236 (3d Cir. 2004). For the purposes of this motion, they are presented in the light most favorable to the plaintiff, as the non-moving party, and are accepted as true with all reasonable inferences drawn in his favor.

The amended complaint indicates that on November 26, 2011, Mr. Trusz drank a glass of wine at dinner with some friends. Eight hours later, at 1:50 a.m., Mr. Trusz was pulled over by a State Trooper. Mr. Trusz told the trooper that he had had a glass of wine at dinner, and that he had been treating a cold with cough syrup. He also mentioned the prescribed pain medication he was still taking for a previous neck injury. The trooper then took the plaintiff to the hospital for a blood alcohol test.[3] His blood alcohol level was .11, well over the legal limit.

When Mr. Trusz returned to work after the Thanksgiving holiday, he informed his employer that he had received a DUI arrest on November 26, 2011. The District suspended him with pay on November 30, 2011, pending an investigation. His required

---

[3] This is one example of a gap in the amended complaint. In Paragraph 34, the plaintiff indicates that he was pulled over by a State Trooper whom he told that "he had drank [sic] a glass of wine with his dinner eight hours prior. He also informed the trooper of his medication and the cold he was treating with cough syrup." In the next paragraph, the plaintiff indicates that the "Trooper took him to the Pocono Medical Center, for blood to be drawn to check his blood alcohol level." It does not seem plausible that the trooper would have brought someone to the hospital for a blood test on those facts alone. At the termination hearing, however, State Trooper Derek Felsman testified that early in the morning of November 26, 2011, he was driving in a marked patrol unit on a local road in Monroe County. See N.T. 8/20/12 at 15-16. Trooper Felsman noticed a white pickup truck swerving in front of him. The truck then made a wide turn traveling "over the fog line" before swerving back into its lane. Id. at 17. The trooper pulled the vehicle over, identified the driver as Mr. Trusz, noticed a strong odor of alcohol on his breath, and noticed his eyes were bloodshot and glassy. Id. Mr. Trusz admitted to drinking. Trooper Felsman asked him to submit to field sobriety testing. Id. at 18. Unfortunately, Mr. Trusz was only able to complete one of the three tests because the trooper determined that further testing could be injurious to Mr. Trusz's health. During the first test, Mr. Trusz was swaying from side to side and the trooper decided to stop the test to ensure that Mr. Trusz would not fall and injure himself. Id. Finally, the trooper testified that because of the indicators on the road, the plaintiff's poor performance on the one field test, the odor of alcohol on the plaintiff's breath, his bloodshot and glassy eyes, and his dilated pupils, he felt that Mr. Trusz was under the influence of alcohol which rendered him incapable of safely operating a motor vehicle. Id. at 19. Mr. Trusz was then taken into custody and transported to the hospital for chemical testing. Id.

commercial driver's license ("CDL") was also pulled.[4] Days later, Mr. Trusz admitted at a pre-termination hearing that he was driving while over the legal limit. That admission prompted the District to change his status from suspended with pay to suspended without pay. In August 2012, a termination hearing was held.[5] A month later, the School Board decided to terminate Mr. Trusz's employment with the District.

In June 2012, Mr. Trusz entered into the Monroe County Accelerated Rehabilitative Disposition (ARD) program for first time DUI offenders. He completed the program.

## II. STANDARD FOR A MOTION TO DISMISS

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure examines the legal sufficiency of the complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The factual allegations must be sufficient to make the claim for relief more than

---

[4] This is another example of a gap in the amended complaint. In Paragraph 38, Mr. Trusz alleges that "the Plaintiff's CDL license was pulled prior to a conviction regarding the aforementioned incident." It is not clear who had pulled the license or under what authority. The District's Board of Directors found, however, "As a direct result of being placed into the ARD Program, Trusz's operating privileges in the Commonwealth of Pennsylvania were suspended for a period of thirty days." See Adjudication, Finding of Fact #8. It also found, "As a further consequence of his placement into the ARD Program, Trusz became disqualified from driving a commercial vehicle for a period of one year. Placement into the ARD Program is considered a 'conviction' triggering the one year disqualification from driving a commercial vehicle prohibition." Id. at #9 and #10. At the termination hearing, Mr. Trusz ultimately agreed with these findings of the Board concerning the loss of his license. See N.T. 8/20/12 at 28-29.

[5] This is yet another example of a gap in the amended complaint. Nowhere does Mr. Trusz mention having been provided a pre-termination meeting, a termination hearing, or an Adjudication from the Board of Directors. There is further no mention of the notices he received from the District informing him of the charges against him or of his rights at the hearings. To the contrary, Mr. Trusz repeatedly alleges that he was not given any type of due process by the defendant regarding the adverse job actions taken against him. See Am. Compl. ¶¶ 15, 22, 23, 26, 28. The defendant's attached documents prove otherwise, and help the court to more fully understand the plaintiff's allegations in the amended complaint.

5

just speculative. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). In determining whether to grant a motion to dismiss, a federal court must construe the complaint liberally, accept all factual allegations in the complaint as true, and draw all plausible inferences in favor of the plaintiff. Id.; see also D.P. Enters. v. Bucks County Cmty. Coll., 725 F.2d 943, 944 (3d Cir. 1984).

It remains true that the Federal Rules of Civil Procedure do not require a plaintiff to plead in detail all of the facts upon which he bases his claim. Rather, the Rules require "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). In recent rulings, however, the Supreme Court has rejected language in Conley which stated that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Twombly, 550 U.S. at 561. Rather, a "complaint must allege facts suggestive of [the proscribed] conduct," Twombly, 550 U.S. at 564, and it must contain enough factual matters to suggest the required elements of the claim or to "raise a reasonable expectation that discovery will reveal evidence of" those elements. Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 556). Neither "bald assertions" nor "vague and conclusory allegations" are accepted as true. See Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).

In assessing the merits of a motion to dismiss, courts must be careful to recognize that, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678

(2009). "[O]nly a complaint that states a *plausible* claim for relief survives a motion to dismiss." Id. at 679 (emphasis added). In recognition of these principles, courts must first identify those allegations in a complaint that are mere conclusions and are therefore not entitled to the assumption of truth, and next, consider whether the complaint's factual allegations, which *are* entitled to a presumption of truth, plausibly suggest an entitlement to relief. Id. at 680 (emphasis added).

## III. DISCUSSION

### A. Count One -- Procedural Due Process Claim

In bringing this action under § 1983, Mr. Trusz alleges that the District denied him his property rights in public employment without due process of law in violation of the Fourteenth Amendment to the United States Constitution. Title 42 of the United States Code § 1983 provides remedies for deprivations of rights established in the Constitution or federal laws. It does not, by its own terms, create substantive rights. Baker v. McCollan, 443 U.S. 137, 145 n.3 (1979); see also Oklahoma City v. Tuttle, 471 U.S. 808, 816 (1985). Section 1983 provides, in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Thus, the Supreme Court has set forth two threshold inquiries for district courts in evaluating § 1983 claims: "(1) whether the conduct complained of was committed by a

7

person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." Parratt v. Taylor, 451 U.S. 527, 535 (1981); see also West v. Atkins, 487 U.S. 42, 48 (1988); Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999); Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995); Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000). Action under color of state law requires that the one liable under § 1983 have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law. Harvey v. Plains Twp. Police Dep't, 635 F.3d 606, 609 (3d Cir. 2011) (quoting Abbott v. Latshaw, 164 F.3d 141, 146 (3d Cir. 1998)). Here, there is no dispute that the Defendant School District is a state actor, and that Mr. Trusz was its employee.

To demonstrate a procedural due process violation, a plaintiff must show that (1) he was deprived of an individual interest encompassed within the Fourteenth Amendment's protection of life, liberty, or property, and that (2) the procedures available to him did not provide due process of the law. Hill v. Borough, 455 F.3d 225, 233-234 (3d Cir. 2006). In determining whether Mr. Trusz has a property interest in employment with the District, state law governs. Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972) (an interest in property protected by procedural due process results from a "legitimate claim of entitlement" created by sources such as state law and express or implied contracts); see also Nicholas v. Pennsylvania State University, 227 F.3d 133, 140 (3d Cir. 2000). The Pennsylvania School Code sets forth procedural due process guarantees for tenured public employees prior to dismissal. See Public School Code of 1949, Act of

March 10, 1949, P.L. 30, art. XI, § 1127, 24 P.S. § 11-1127; see also Coleman v. Board of Education Of School District of Philadelphia, 383 A.2d 1275, 1280 (Pa. 1978) (Section 514 establishes rights in a school district employee not to be dismissed without specific cause and not to be dismissed without due notice and a statement of reasons, and it established corresponding duties in the School District). Specifically, Section 5-514 of the Pennsylvania Public School Code provides that:

> The board of school directors in any school district, except as herein otherwise provided, **shall after due notice, giving the reasons therefor, and after hearing if demanded**, have the right at any time to remove any of its officers, employees, or appointees for incompetency, intemperance, neglect of duty, violation of any of the school laws of this Commonwealth, **or other improper conduct.**

24 P.S. § 5-514 (emphasis added). "The hallmark of a constitutionally protected property interest is an individual entitlement that cannot be removed except for cause." Bradley v. Pittsburgh Board of Education, 913 F.2d 1064, 1078 (3d Cir. 1990). Thus, as a public employee, Mr. Trusz had a due process property right to continued employment with the District. Cleveland Board of Education v. Loudermill, et al., 470 U.S. 532, 542 (1985); see also Lewis v. Sch. Dist. of Philadelphia, 690 A.2d 814, 817 (Pa. Commw. Ct. 1997) (under Pennsylvania law, if a plaintiff is an employee of a School District, then 24 P.S. § 5-514 provides him with a property interest in that employment).

A public employee is entitled to a "pre-termination hearing," a meeting of the parties which determines whether reasonable grounds exist to believe that the charges against the employee are valid. Loudermill, 470 U.S. at 545–546. An employer must

9

further provide an employee with an opportunity to be heard prior to imposing a suspension without pay. Schmidt v. Creedon, 639 F.3d 587, 596-597 (3d Cir. 2010) (citing Loudermill, 470 U.S. at 545). On December 6, 2011, Mr. Trusz attended such a meeting with his supervisor, his union's president, and Mr. Castrovinci to discuss the charges against him. He was afforded an opportunity to participate in the informal meeting, and to make any plausible arguments that might have prevented his suspension and termination. At that meeting, Mr. Trusz admitted that he had been driving with a blood alcohol level over the legal limit. Afterwards, the District changed Mr. Trusz's employment status from suspended with pay to suspended without pay. The District sent Mr. Trusz a memo which memorialized the meeting.

It is evident that, before he was suspended without pay, Mr. Trusz was entitled to, and received, notice of the charges against him and an opportunity to present his side of the story. See Loudermill, 470 U.S. at 545. Under these circumstances, I find that Mr. Trusz was provided all the due process required before he was suspended without pay pending a termination hearing.

Likewise, Mr. Trusz was afforded due process surrounding his termination hearing and ultimate termination. He received a letter from the District dated April 18, 2012, advising him that the School District was recommending to the School Board that his employment be terminated due to his arrest for driving under the influence. The letter stated, in pertinent part:

> You are hereby being charged by the District's Administration with other improper conduct arising out of the following:

> On or about November 26, 2011, you were arrested for driving a vehicle while under the influence of alcohol. You have admitted that your blood alcohol level was above the legal limit of .08%; in fact, you admitted that your blood alcohol level was above .10%.

The letter also notified Mr. Trusz that, if he would request it, a termination hearing would be held on May 17, 2012 before a Committee of the School District's Board of Directors. The letter advised that he had the right to be represented by counsel at the hearing, that he had the right to hear witnesses against him and cross-examine them, that he had the right to present his own witnesses and evidence, and that he had the right to testify on his own behalf. Mr. Trusz attended the termination hearing held on August 20, 2012 with his non-attorney union representative.[6] At the hearing, Mr. Trusz admitted that he could not currently perform his functions as a school bus driver because his commercial driver's license had been suspended for a year. That license is an essential job requirement for a school bus driver. Approximately one month later, the School Board decided to terminate Mr. Trusz's employment with the District. The District mailed a copy of the School Board's Resolution to Mr. Trusz on September 19, 2012. He could have appealed from this decision but he did not.

---

[6] An issue arose at the termination hearing concerning whether Mr. Trusz could have brought an attorney, and whether the union representative could have acted as Mr. Trusz's advocate at the hearing. Although the notice stated that Mr. Trusz had the right to be represented by counsel at the hearing, Mr. Trusz indicated that he thought he was not permitted to bring an attorney. See N.T. 8/20/12 at 4-5, 25. The Hearing Officer found that (1) permitting the union representative to speak on behalf of the plaintiff would be allowing him to engage in the unauthorized practice of law, see id. at 5; and (2) Mr. Trusz was, in fact, notified of his right to bring counsel through the notice he received scheduling the hearing, see id. at 26.

Mr. Trusz then availed himself of his union's grievance procedures. On January 30, 2013, the plaintiff appeared before an arbitrator to appeal the adverse employment action against him. On May 3, 2013, the arbitrator ordered that Mr. Trusz be reinstated to his job for the 2013-2014 school year, if he could obtain the necessary licenses to work as a school bus driver. The arbitrator denied the plaintiff's request for back pay.

It is well-settled that an employee with a protected interest in his employment may be terminated only after receiving notice of the charges against him and an opportunity for a hearing sufficient to respond to those charges. Loudermill, 470 U.S. at 542-548. Mr. Trusz received such notices from the District, and he had the opportunity for both a pre-termination meeting and a termination hearing with the District. He also had the opportunity to bring counsel to the termination hearing and to prepare for his defense. Mr. Trusz was informed of his right to cross-examine the District's witnesses and to object to any evidence the District presented. He could have presented his own witnesses and evidence. He also successfully availed himself of his union's grievance procedure. Under these circumstances, it appears that the amended complaint neither alleges facts suggestive of the conduct described in Count One, nor raises a reasonable expectation that discovery will reveal evidence of the required elements of that claim.. Twombly, 550 U.S. at 563, 556. I find that Mr. Trusz was provided all the due process required before the termination of his employment with the District. Accordingly, I will grant the District's motion to dismiss Count One.

### B. Count Two -- Section 504 of the Rehabilitation Act

In Count Two of the amended complaint, Mr. Trusz alleges that the District violated § 504 of the Rehabilitation Act, 29 U.S.C. § 701, *et seq.*, by discriminating against him because of a disability. He claims that in 2010, he "was injured when he walked into an overhead office sign, and ultimately had a C4-C5 fusion surgery as a result." See Am.Compl. ¶ 32. Because of constant pain due to his neck injury and surgery, Mr. Trusz takes prescribed pain medication on a regular basis. Id. at ¶ 33. Moreover, the plaintiff insists that the defendant "was aware of his serious health condition," that his condition "substantially limited one or more of his major life activities," and that "healthier bus drivers have been treated more leniently for more severe offenses." Id. at ¶¶ 41, 44. He further insists that he could perform the essential functions of his job with a reasonable accommodation. Id. at ¶ 43. It appears that Mr. Trusz suggests that the District should have afforded him the "reasonable accommodation of waiting for a conviction on his DUI charges is [sic] what he would have expected from the defendant [sic] would not have constituted any significant hardship to the defendant." Id. at ¶ 46. The District argues that "it is unclear what, if any, disability the plaintiff has which would require an accommodation," but characterizes the plaintiff's term "waiting for a conviction on his DUI charges" as a medical leave of absence. I note that at his termination hearing, Mr. Trusz was asked, "But you don't have the ability to drive a – to operate as a CDL right now; is that correct?" See N.T. 8/20/12 at 29. Mr. Trusz responded, "Yes, sir. I was hoping that I could just take a one-year leave of absence

because I would get my license back in March or June [2013]." Id. This exchange, however, was not presented in the context of a disability-based accommodation.

The Rehabilitation Act forbids a federal employer and/or an employer who receives federal funds from discriminating against persons with disabilities in matters of hiring, placement, or advancement. Shiring v. Runyon, 90 F.3d 827, 830-831 (3d Cir. 1996). At the same time, Congress recognizes that employers have legitimate interests in performing the duties of their business adequately and efficiently. Id. at 831. Employers cannot be obligated to employ persons who are incapable of performing the necessary duties of the job. Id. Therefore, Congress has devised the following standards:

In order for an employee to make out a *prima facie* case of discrimination under the Rehabilitation Act, the employee bears the burden of demonstrating that (1) he has a disability, (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he was nonetheless terminated or otherwise prevented from performing the job. Id. The plaintiff must make a *prima facie* showing that reasonable accommodation is possible. Id. If the plaintiff is able to meet these burdens, the defendant then bears the burden of proving, as an affirmative defense, that the accommodations requested by the plaintiff are unreasonable, or would cause an undue hardship on the employer. Id.

### 1. Disability

To satisfy the first element of his *prima facie* disability employment discrimination claim under the Rehabilitation Act, Mr. Trusz must demonstrate that he has, has a record of having, or is regarded as having a physical or mental impairment that

substantially limits one or more of his major life activities. See 29 U.S.C. § 705(20)(B). For purposes of the Rehabilitation Act, a physical or mental impairment is defined as:

> (A) any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological; musculoskeletal; special sense organs; respiratory, including speech organs; cardiovascular; reproductive, digestive, genito-urinary; hemic and lymphatic; skin; and endocrine; or
>
> (B) any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities.

34 C.F.R. § 104.3(j)(2)(i). A major life activity is one that is "of central importance to daily life," see Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 197 (2002), such as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working," see 29 C.F.R. § 1630.2(i), or "sitting, standing, lifting [and] reaching." Kralik v. Durbin, 130 F.3d 76, 78-79 (3d Cir. 1997) (quoting 29 C.F.R. § 1630).

Here, Mr. Trusz alleges that he suffers from severe damage to his neck which is permanent and debilitating in nature. He alleges further, without specifics, that his neck-related medical condition substantially limits one or more of his major life activities. I must accept as true these factual allegations, and draw all reasonable inferences in Mr. Trusz's favor. Thus, I find, for purposes of this motion only, that Mr. Trusz has a physical impairment that substantially limits one or more of his major life activities, i.e.,

a disability sufficient to satisfy the first element of a *prima facie* case of employment discrimination based on disability.

2. Essential Functions

It is at this second element of the *prima facie* case that Mr. Trusz fails to meet his burden. To have been successful, Mr. Trusz must have shown that "with or without reasonable accommodation, [he] can perform the essential functions of the employment position that [he] holds or desires." Deane v. Pocono Med. Ctr., 142 F.3d 138, 145 (3d Cir. 1998). He can make no such showing.

It is undisputed that driving a school bus is an essential function of Mr. Trusz's employment with the District. It is also undisputed that in order to drive a school bus for the District, a driver must have a valid Pennsylvania motor vehicle bus driver's license, consisting of a CDL with an S endorsement signifying a school bus license. On the date of the termination hearing, Mr. Trusz had no such license, and admitted so under oath. See N.T. 8/20/12 at 29, 30. He therefore could not perform the essential functions of a school bus driver, with or without an accommodation.[7] Employers like the District have legitimate interests in performing the duties of their businesses adequately and efficiently, and cannot be obligated to employ persons who are incapable of performing the necessary duties of the job. Shiring v. Runyon, 90 F.3d at 830-831. Thus, the District had no option but to terminate Mr. Trusz's employment.

---

[7] It is not necessary to address the District's arguments concerning Mr. Trusz's failure to exhaust his administrative remedies or whether a medical leave of absence pending the termination of his CDL's suspension constitutes a reasonable accommodation under the Rehabilitation Act. Notwithstanding these issues, Mr. Trusz could not have performed the essential functions of his job without the required CDL with an S endorsement.

16

Under these circumstances, it appears that the amended complaint neither alleges facts suggestive of a violation of the Rehabilitation Act described in Count Two, nor raises a reasonable expectation that discovery will reveal evidence of the required elements of that claim. <u>Twombly</u>, 550 U.S. at 563, 556. Accordingly, I will grant the District's motion to dismiss Count Two.

In conclusion, the Third Circuit has instructed that a district court must permit a curative amendment if a claim is vulnerable to a 12(b)(6) dismissal, unless amendment would be inequitable or futile. See <u>Phillips v. Cnty. of Allegheny</u>, 515 F.3d 224, 236 (3d Cir. 2008). Here, amendment would be futile because it is apparent that nothing could change the facts that (1) Mr. Trusz received the due process required before his suspension without pay and before his termination, and (2) Mr. Trusz was unable to perform the essential functions of his job when his employment was terminated by the District.

An appropriate Order follows.